**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**Mindy Suzanne Selby**<br>**aka Mindy Hayes,**<br>**Debtor.** | **CHAPTER 13**<br>**CASE NO.: 24-10781-SDB** |
| | |
| **Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Freddie Mac Seasoned Loans Structured Transaction Trust, Series 2019-3,**<br>Movant,<br>v.<br><br>**Mindy Suzanne Selby**<br>**aka Mindy Hayes,**<br>**Debtor.**<br>**Huon Le,**<br>**Trustee,**<br>Respondents. | CONTESTED MATTER |

**<u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>**

COMES NOW, Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Freddie Mac Seasoned Loans Structured Transaction Trust, Series 2019-3, (the "Movant"), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Mindy Suzanne Selby aka Mindy Hayes, (the "Debtor"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on October 29, 2024.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor has an interest.  Movant holds a security interest in the Debtor's real property now or formerly known as **428 Armstrong Way, Evans, Georgia 30809** (the "Property") by virtue of a Security Deed dated February 11, 2008.  Said Security Deed secures a Note in the original principal amount of $295,000.00.  The promissory note has been duly endorsed.  **Select Portfolio Servicing, Inc. is the servicer of the loan described in the Note and Mortgage and, as such, has the authority to initiate the instant action and any foreclosure on the Creditor's behalf.**

4.

The terms and conditions of the Note and Mortgage were later amended pursuant to the Loan Modification Agreement (the "Agreement") made April 2, 2021. Said Agreement created a new principal balance of $260,487.93. A true and accurate copy of the Agreement is attached hereto.

5.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due.  As of April 14, 2025, the post-petition arrearage owed to Movant is $1,628.55 and consists of March 1, 2025 through April 1, 2025 monthly mortgage payments at $1,779.51, less a suspense balance of $1,930.47. An additional payment will come due May 1, 2025 and on the first day of each month thereafter until the loan is paid in full.

6.

Movant further alleges there appears to be no equity in the Property; therefore, the Property is not necessary for effective reorganization. The current unpaid principal balance due under the loan documents is approximately $248,144.08. The Property is most recently valued at $396,903.00 by the Columbia County Tax Assessor's Office.

7.

Movant's security interest in the Property is not adequately protected due to the Debtor's failure to maintain the mortgage payments.

8.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

9.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

(d) That Movant be permitted to offer and provide Debtor(s) with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor(s).

(e) That in the event of an Order granting relief from the automatic stay and said Order also instructing the Chapter 13 Trustee to cease disbursements on Movant's Proof of Claim, Fed. R. Bank. P. 3002.1 shall no longer apply as to Movant, as said Rule only applies in Chapter 13 cases in which claims secured by a principal residence are provided for under Section 1322(b)(5) of the Code in the Chapter 13 Plan; and

(f) For such other and further relief the Court deems just and proper.

Date: 05/02/2025

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/___Willie B. Smith
Willie Bruce Smith
Georgia Bar # 507412
Robertson, Anschutz, Schneid, Crane
& Partners, PLLC

13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
E-mail: wismith@raslg.com

# SUPPORTING DOCUMENTS

# NOTE

HAYES

| **FEBRUARY 11, 2008** | **AUGUSTA,** | **GEORGIA** |
|---|---|---|
| [Date] | [City] | [State] |

**428 ARMSTRONG WAY, EVANS, GA 30809**
[Property Address]

**1 BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U S $295,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender The Lender is **GEORGIA BANK & TRUST COMPANY OF AUGUSTA** I will make all payments under this Note in the form of cash, check or money order

I understand that the Lender may transfer this Note The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid I will pay interest at a yearly rate of 5.125%

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note

**3 PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month

I will make my monthly payment on the 1ST day of each month beginning on **APRIL 1, 2008** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal If, on **MARCH 1, 2038**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at **3515 WHEELER ROAD, BUILDING B, AUGUSTA, GA** 30909 or at a different place if required by the Note Holder

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U S $1,606.24

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due A payment of Principal only is known as a "Prepayment " When I make a Prepayment, I will tell the Note Holder in writing that I am doing so I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes

**5 LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal, the reduction will be treated as a partial Prepayment

**6 BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder The amount of the charge will be 5.000% of my overdue payment of principal and interest I will pay this late charge promptly but only once on each late payment

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law Those expenses include, for example, reasonable attorneys' fees

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**8 OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note The Note Holder may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note

**9 WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

**10 UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note Some of those conditions are described as follows

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

2/11/08

- BORROWER - Mindy S Hayes - DATE -

*[Sign Original Only]*

PAY TO THE ORDER OF
WELLS FARGO BANK, NA

GEORGIA BANK & TRUST COMPANY OF AUGUSTA
3515 WHEELER ROAD BLDG A
AUGUSTA, GA 30909

SIGNED

Charles B. Walker, Senior Vice President
GEORGIA BANK & TRUST COMPANY OF AUGUSTA

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N A

By

Scott M Swanson
Assistant Vice President

RECORD AND RETURN TO:

BK 6374 PG 044

AUGUSTA GA 30907

CLERK OF SUPERIOR COURT
COLUMBIA COUNTY, GEORGIA
FILED IN OFFICE

2008 FEB 15 PM 2:06

44-61

CINDY MASON, CLERK

Prepared By
MARY ANN STACY
GEORGIA BANK & TRUST COMPANY OF AUGUSTA
3515 WHEELER ROAD, BUILDING B
AUGUSTA, GA 30909
(706) 739-1780

After Recording Return To
GEORGIA BANK & TRUST COMPANY OF AUGUSTA
3515 WHEELER ROAD, BUILDING B
AUGUSTA, GA 30909
(706) 739-1780
ATTN GEORGIA BANK AND TRUST

Deed
Doc: SD

Recorded 02/15/2008 02:06PM
Georgia Intangible Tax Paid $885.00
CINDY MASON
Clerk Superior Court, Columbia County
B 06374 P 0044-0061

[Space Above This Line For Recording Data]

## SECURITY DEED

HAYES

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21 Certain rules regarding the usage of words used in this document are also provided in Section 16

**(A) "Security Instrument"** means this document, which is dated FEBRUARY 11, 2008 together with all Riders to this document.

**(B) "Borrower"** is MINDY S HAYES Borrower is the grantor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS

**(D) "Lender"** is GEORGIA BANK & TRUST COMPANY OF AUGUSTA Lender is a CORPORATION organized and existing under the laws of GEORGIA Lender's address is 3515 WHEELER ROAD, BUILDING B, AUGUSTA, GA 30909

**(E) "Note"** means the promissory note signed by Borrower and dated FEBRUARY 11, 2008 The Note states that Borrower owes Lender TWO HUNDRED NINETY FIVE THOUSAND Dollars (U S $295,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MARCH 1, 2038

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property"

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☒ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider ☒ Other(s) [specify] WAIVER OF BORROWER'S RIGHTS AND CLOSING ATTORNEY AFFIDAVIT.

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final non-appealable judicial opinions

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(L) **"Escrow Items"** means those items that are described in Section 3

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U S C §2601 et seq ) and its implementing regulation, Regulation X (24 C.F R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the COUNTY of COLUMBIA

which currently has the address of 428 ARMSTRONG WAY, EVANS, GA 30809 ("Property Address")

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows.

**1 Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U.S currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2 Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender

may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be in writing In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9 If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4 **Charges; Liens** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee Lender shall have the right to hold the policies and renewal certificates If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights

are applicable to the coverage of the Property Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property, Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8 Borrower's Loan Application** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9 Protection of Lender's Interest in the Property and Rights Under this Security Instrument** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to. (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan,

Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11 Assignment of Miscellaneous Proceeds, Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by

this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12 **Borrower Not Released, Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

13 **Joint and Several Liability, Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's

obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15 Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,

Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19 **Borrower's Right to Reinstate After Acceleration** If Borrower meets certain conditions Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

20 **Sale of Note, Change of Loan Servicer, Notice of Grievance** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

21 **Hazardous Substances** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene other flammable or toxic petroleum products toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as

defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

**22 Acceleration, Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify (a) the default; (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.**

**If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the**

**sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

2/11/08

- BORROWER - Mindy S Hayes - DATE -

Signed, sealed and delivered in the presence of

Unofficial Witness O. FRANKLIN ASKIN

Notary Public ~~[illegible]~~ COUNTY

STATE OF

My Commission Expires,

KIMBERLY MIDGETT NOTARY PUBLIC EXP 07-08-2011 RICHMOND COUNTY GA

[Space Below This Line For Acknowledgment]

**PLANNED UNIT DEVELOPMENT RIDER**

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 11TH day of FEBRUARY, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to GEORGIA BANK & TRUST COMPANY OF AUGUSTA, (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

428 ARMSTRONG WAY, EVANS, GA 30809

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY (the "Declaration"). The Property is a part of a planned unit development known as

RIVERWOOD PLANTATION

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including

deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then. (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy

What Lender requires as a condition of this waiver can change during the term of the loan

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

C **Public Liability Insurance** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender

D **Condemnation** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11

E **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain, (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

F. **Remedies** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider

Mindy S Hayes 2/11/08
- BORROWER - Mindy S Hayes - DATE -

Exhibit "A"

ALL THAT LOT OR PARCEL OF LAND, with improvements thereon, situate, lying and being in the State of Georgia, County of Columbia, being known and designated as **Lot 27, Block H, Newland Place, Section Four at Riverwood Plantation** as shown on a plat prepared by Robert L. Herrington, Jr , dated June 5, 2003 and recorded in the Office of the Clerk of the Superior Court of Columbia County, Georgia in **PC "E", Slide 91 #3-#5** Reference is hereby made to said plat for a more complete and accurate description as to the metes, bounds and location of said property.

Said property is conveyed subject to Riverwood Plantation Supplemental Declaration of Covenants, Conditions and Restrictions for Newland Place at Riverwood Plantation recorded in said Clerk's Office in Deed Book 4529, page 168, and also subject to any and all easements and restrictions of record.

Map and Parcel

After Recording Return To:
GEORGIA BANK & TRUST COMPANY
OF AUGUSTA
3515 WHEELER ROAD, BUILDING
B
AUGUSTA, GA 30909
ATTENTION GEORGIA BANK AND
TRUST

Prepared By
MARY ANN STACY
GEORGIA BANK & TRUST COMPANY
OF AUGUSTA
3515 WHEELER ROAD, BUILDING
B
AUGUSTA, GA 30909
(706) 739-1780

---

# WAIVER OF BORROWER'S RIGHTS

GRANTOR
MINDY S HAYES

LENDER GEORGIA BANK & TRUST COMPANY OF AUGUSTA

DATE OF SECURITY DEED: FEBRUARY 11, 2008

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF, (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED, (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION, AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED

READ AND AGREED BY GRANTOR:

2/11/08

- BORROWER - Mandy S Hayes - DATE -

Signed, sealed and delivered in the presence of

Unofficial Witness O. FRANKLIN ASKIN, JR.

Notary Public ~~CYNTHIA~~

KIMBERLY MIDGETT NOTARY EXP 07-09-2011 PUBLIC RICHMOND COUNTY, GA

**CLOSING ATTORNEY'S AFFIDAVIT**

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights"

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure

Closing Attorney O. FRANKLIN ASKIN, JR.

Sworn to and subscribed before me on FEBRUARY 11, 2008

Notary Public ~~CYNTHIA~~

KIMBERLY MIDGETT NOTARY EXP 07-09-2011 PUBLIC RICHMOND COUNTY, GA

**MODIFICATION AGREEMENT**

This Loan Modification Agreement ("Agreement") is effective 04/01/2021, between MINDY S HAYES and Select Portfolio Servicing, Inc , acting on behalf of the owner of the Note, ("Lender") If Borrower's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the Note made by the Borrower, dated 02/11/2008, in the original principal sum of $295,000 00 ("Note") The Mortgage or Deed of Trust ("Security Instrument"), which was entered into as security for the Note, encumbers the real and personal property described in the Security Instrument (defined in the Security Instrument as the "Property"), known as

428 ARMSTRONG WAY
EVANS, GA 30809

The Note and Security Instrument are collectively referred to in this Agreement as the "Loan Documents "

1 Borrower Representations and Covenants Borrower certifies, represents, covenants, and agrees as follows

a Borrower is experiencing a financial hardship, and as a result Borrower does not have sufficient income or access to sufficient liquid assets to make the outstanding monthly mortgage payments that have accrued to date

b There has been no impermissible change in the ownership of the Property since Borrower signed the Note

c If requested by Lender, Borrower has provided documentation for all income that they receive

d All documents and information Borrower has provided to Lender in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct

e Borrower will make all payments required under the terms of the Agreement

f The property is neither in a state of disrepair, nor condemned

g Borrower is not a party to any litigation involving the Loan Documents, except to the extent the Borrower may be a defendant in a foreclosure action

2 The Modification If Borrower's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2021 (the "Modification Effective Date") and any late charges that remain unpaid will be waived The first modified payment will be due on 05/01/2021

a The Maturity Date will be 05/01/2054

b The principal balance of the Note will remain the same and such balance is $260,487 93 as of 04/01/2021 The advances made prior to the date of this Agreement (including but not limited to escrow advances and servicing advances) will continue to be due and payable under the Note The current balance of these advances is $0 00

c The interest rate remains unchanged from the terms set forth in the Loan Documents As a result, the existing interest rate of 4 62500% will be applied to the New Principal Balance as of 04/01/2021 and the monthly payment of $1,789 95 will be due on 05/01/2021

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly

d Borrower has agreed to establish an escrow account to pay for property taxes and homeowner's insurance and pay a monthly escrow payment in the initial amount of $507 50 Borrower's total monthly payment of principal, interest and escrow will therefore be equal to $1,789 95 Borrower acknowledges that the payments attributable to insurance and taxes are determined by the state taxing authorities and insurance companies and therefore, are subject to change from time to time Borrower will be notified of any changes

3   Other Agreements   Borrower and Lender also agree to the following

a   The foregoing terms of this Agreement shall supersede any corresponding terms of any modification, deferral, forbearance, trial period plan, or other workout plan that Borrower previously entered into with Lender   Previous deferred amounts and earned forgiveness will remain on the account and are subject to the terms of any prior modification or deferral agreement

b   The Security Instrument and Note, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed

c   All terms of the Security Instrument and Note, except as expressly modified by this Agreement, or by the U S Bankruptcy Code, remain in full force and effect   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Note and Security Instrument

d   Borrower will be bound by and comply with all covenants, agreements, and requirements of the Note as modified by the Agreement and the Security Instrument, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Note and Security Instrument

e   If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after receipt of the Lender's request, Borrower will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s)   If Borrower fails to do so, Borrower will be liable for any and all loss or damage which the Lender reasonably sustains as a result of Borrower's failure   At Lender's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy   If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Borrower will not be eligible for a modification

f   The mortgage insurance premiums due from Borrower, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment   Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance

g   As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, Borrower agrees as follows   If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage   However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer   If the Lender exercises this option, the lender shall give borrower notice of acceleration   The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Mortgage   If Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on the Borrower

h   As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Loan   In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property

i   All payment amounts specified in this Agreement assume that payments will be made as scheduled

j   If Borrower is in bankruptcy upon execution of this document, Borrower will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures   Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void   If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement

k   If Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement

l   In agreeing to the changes to the original Loan Documents as reflected in this Agreement, Lender has relied upon the truth and accuracy of all of the representations made by Borrower(s), both in this Agreement and in any documentation provided by or on behalf of Borrower(s) in connection with this Agreement   If Lender subsequently determines that such representations or documentation were not truthful or accurate, Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred

**TAX CONSEQUENCES OF LOAN MODIFICATIONS** There may be income tax consequences related to this loan modification   Because you will be responsible for paying any income tax due as a result of this loan modification, you may wish to consult a tax advisor before accepting this loan modification

The Borrower(s) and Lender have signed this Agreement as of the Effective Date

Borrower Signature — Date 4-2-21

NA

Borrower Signature — Date NA

Jennifer Cano
Document Control Officer

Select Portfolio Servicing, Inc (On behalf of Lender) — Date APR 2 1 2021

Jennifer Cano
Document Control Officer

DIGIMAIL APR 0 7 2021



BOOK 8724 PAGE 055

CLERK OF SUPERIOR COURT
COLUMBIA COUNTY, GEORGIA
FILED IN OFFICE
2013 FEB -4 AM 10:44
BOOK 8724 PAGE 55-56
CINDY MASON, CLERK

Recording Requested By WELLS FARGO BANK, N A
When Recorded Return To DEFAULT ASSIGNMENT, WELLS FARGO BANK, N A MAC X9999-018 PO BOX 1629, MINNEAPOLIS, MN 55440-9790

**CORPORATE ASSIGNMENT OF SECURITY DEED**

Columbia, Georgia
"HAYES"

**MERS #** **SIS # 1-888-679-6377**

**PREPARED BY WELLS FARGO BANK, N A**

*Date of Assignment* January 31st, 2013
Assignor MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC , AS NOMINEE FOR GEORGIA BANK AND TRUST COMPANY OF AUGUSTA, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C , DANVILLE, IL 61834
Assignee WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By MINDY S HAYES To MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC , AS NOMINEE FOR GEORGIA BANK AND TRUST COMPANY OF AUGUSTA, ITS SUCCESSORS AND ASSIGNS
Date of Security Deed 02/11/2008 Recorded 02/15/2008 in Book/Reel/Liber 06374 Page/Folio 0044 In the County of Columbia, State of Georgia

Property Address 428 ARMSTRONG WAY, EVANS, GA 30809

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $295,000 00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC , AS NOMINEE FOR GEORGIA BANK AND TRUST COMPANY OF AUGUSTA, ITS SUCCESSORS AND ASSIGNS
On 1-31-13

By Brianna Schenkelberg
___, Assistant Secretary

WITNESS Alexander Baugh

WITNESS Megan Avon

BOOK 8724 PAGE 056

STATE OF Iowa
COUNTY OF Polk

On 1-31-13, before me, Leah Brown, a Notary Public in and for Polk in the State of Iowa, personally appeared Brianna Schenkelberg, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal,

Leah Brown
Leah Brown
Notary Expires 1/24/15

LEAH BROWN
Commission Number 771343
My Commission Expires
January 24, 2015

(This area for notarial seal)






CLERK OF SUPERIOR COURT
COLUMBIA COUNTY, GEORGIA
FILED IN OFFICE

2017 JUN 30 AM 11:38
BOOK 10982 PAGE 206
CINDY MASON, CLERK

Deed
Doc ASG

CINDY MASON
Clerk Superior Court, Columbia County
B 10982 P 0206

Recording Requested By WELLS FARGO BANK, N A
When Recorded Return To ASSIGNMENT TEAM, WELLS FARGO BANK, N A 1000 BLUE GENTIAN RD #200 MAC N9289-018, EAGAN, MN 55121-4400

## CORPORATE ASSIGNMENT OF SECURITY DEED

Columbia, Georgia
"HAYES"

**PREPARED BY WELLS FARGO BANK, N A**

Date of Assignment June 21st, 2017
Assignor WELLS FARGO BANK, N A at 1 HOME CAMPUS, DES MOINES, IA 50328
Assignee LOANCARE, LLC at 3637 SENTARA WAY, VIRGINIA BEACH, VA 23452

Executed By MINDY S HAYES To MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC , AS NOMINEE FOR GEORGIA BANK & TRUST COMPANY OF AUGUSTA, ITS SUCCESSORS AND ASSIGNS
Date of Security Deed 02/11/2008 Recorded 02/15/2008 in Book/Reel/Liber 06374 Page/Folio 0044 In the County of Columbia, State of Georgia

Property Address 428 ARMSTRONG WAY, EVANS, GA 30809

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security Deed having an original principal sum of $295,000 00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Security Deed

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the terms contained in said Security Deed

WELLS FARGO BANK, N A
On 6/22/17

By [signature]
Dereje D. Bodada
Vice President Loan Documentation

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT

WITNESS [signature]
Ying Her

NOTARY WITNESS

STATE OF Minnesota
COUNTY OF Dakota

Subscribed and sworn to (or affirmed) before me on 6/22/17, by Dereje D. Bodada, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me

WITNESS my hand and official seal,

[signature]
Phillip Marquis Smith
Notary Expires 1/31/19

PHILLIP MARQUIS SMITH
NOTARY PUBLIC MINNESOTA
MY COMMISSION EXPIRES 01/31/2019

(This area for notarial seal)

Deed Doc ASGN
Recorded 06/27/2019 04 06PM

CINDY MASON
Clerk Superior Court, COLUMBIA
County, Ga
Bk 12012 Pg 0261
Penalty $0 00
Interest $0 00
Participants

**GEORGIA**

COUNTY OF **COLUMBIA**
LOAN NO

WHEN RECORDED MAIL TO ATTN. ASSIGNMENT PROCESSING, SPECIALIZED LOAN SERVICING LLC C/O FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH (208) 528-9895

# CORPORATE ASSIGNMENT

FOR VALUE RECEIVED, **LOANCARE, LLC**, located at **3637 SENTARA WAY, VIRGINIA BEACH, VA 23452**, Assignor, does this day transfer, assign, convey, and deliver unto **SPECIALIZED LOAN SERVICING LLC**, located at **8742 LUCENT BLVD STE. 300, HIGHLANDS RANCH, CO 80129**, Assignee, its successors, representatives, and assigns, all of Assignor's right, title, and interest in and to that certain Security Deed in the principal sum of **$295,000 00**, dated **FEBRUARY 11, 2008**, executed by **MINDY S HAYES**, Original Grantor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR GEORGIA BANK & TRUST COMPANY OF AUGUSTA, ITS SUCCESSORS AND ASSIGNS**, Original Grantee, and filed for record and recorded on **FEBRUARY 15, 2008** in Deed Book **6374** at Page **044 , MOD. RECORDED ON 04/08/2014 IN BOOK 9322, PAGE 131** in the Office of the Clerk of the Superior Court in the County of **COLUMBIA**, State of **GEORGIA**

**AS DESCRIBED IN SAID SECURITY DEED**

The Assignor herein specifically transfers, conveys and assigns to the above Assignee, its successors, representatives, and assigns the aforesaid Security Deed, the property described therein, together with all the powers, options, rights, privileges, and immunities contained therein on the undersigned

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **JUNE 26, 2019**

**LOANCARE, LLC BY FIRST AMERICAN MORTGAGE SOLUTIONS, AS ATTORNEY IN FACT**

**EMILY POTTLE, ASSISTANT VICE PRESIDENT**

STATE OF **IDAHO** COUNTY OF **BONNEVILLE** ) ss

SIGNED, SEALED, AND DELIVERED in the presence of the below named Notary Public, as an official witness and below named unofficial witness, on **JUNE 26, 2019**, by **EMILY POTTLE, ASSISTANT VICE PRESIDENT**, of **FIRST AMERICAN MORTGAGE SOLUTIONS AS ATTORNEY-IN-FACT FOR LOANCARE, LLC**

Notary Public/Official Witness

**CHRISTY BROWN (COMMISSION EXP 02/13/2021)**
NOTARY PUBLIC

Unofficial Witness

**BETH WILKINSON**, Witness

CHRISTY BROWN
Notary Public State of Idaho
Commission Number 65063
My Commission Expires Feb 13, 2021

MERS PHONE 1-888-679-6377

CLERK OF SUPERIOR COURT
COLUMBIA COUNTY, GEORGIA
FILED IN OFFICE

2020 MAR 13 PM 12:09
BOOK 12452 PAGE 33
CINDY MASON, CLERK

Recorded 03/13/2020 12 09PM

Deed
Doc ASG

CINDY MASON
Clerk Superior Court, Columbia County
B 12452 P 0033

**GEORGIA**

COUNTY OF **COLUMBIA**
LOAN NO

WHEN RECORDED MAIL TO ATTN: **ASSIGNMENT PROCESSING, SPECIALIZED LOAN SERVICING LLC C/O FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402**, PH **(208) 528-9895**

# CORPORATE ASSIGNMENT

FOR VALUE RECEIVED, **SPECIALIZED LOAN SERVICING LLC**, located at **8742 LUCENT BLVD. STE. 300, HIGHLANDS RANCH, CO 80129**, Assignor, does this day transfer, assign, convey, and deliver unto **FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR THE BENEFIT OF THE FREDDIE MAC SEASONED LOANS STRUCTURED TRANSACTION TRUST, SERIES 2019-3 AS OWNER OF THE RELATED MORTGAGE LOAN**, located at **C/O SELECT PORTFOLIO SERVICING, 3217 SOUTH DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119**, Assignee, its successors, representatives, and assigns, all of Assignor's right, title, and interest in and to that certain Security Deed in the principal sum of **$380,000.00**, dated **MAY 15, 2009**, executed by **CLAUDE R WILKES JR, A MARRIED PERSON**, Original Grantor, to **WELLS FARGO BANK, N.A**, Original Grantee, and filed for record and recorded on **MAY 28, 2009** in Deed Book **6940** at Page **049** in the Office of the Clerk of the Superior Court in the County of **COLUMBIA**, State of **GEORGIA**

**AS DESCRIBED IN SAID SECURITY DEED**

The Assignor herein specifically transfers, conveys and assigns to the above Assignee, its successors, representatives, and assigns the aforesaid Security Deed, the property described therein, together with all the powers, options, rights, privileges, and immunities contained therein on the undersigned

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **MARCH 06, 2020**

**SPECIALIZED LOAN SERVICING LLC**

**LISA M CARTER, ASSISTANT SECRETARY**

STATE OF **IDAHO** COUNTY OF **BONNEVILLE** ) ss

SIGNED, SEALED, AND DELIVERED in the presence of the below named Notary Public, as an official witness and below named unofficial witness, on **MARCH 06, 2020**, by **LISA M CARTER, ASSISTANT SECRETARY**, of **SPECIALIZED LOAN SERVICING LLC**

Notary Public/Official Witness
**DALLAS STEPHENSON (COMMISSION EXP. 02/13/2021)**
NOTARY PUBLIC

DALLAS STEPHENSON
Notary Public State of Idaho
Commission Number 65062
My Commission Expires Feb 13 2021

Unofficial Witness
**SEREIA DUNCAN**, Witness

**Fill in this information to identify your case and this filing:**

Debtor 1 Mindy Suzanne Selby
First Name Middle Name Last Name

Debtor 2
(Spouse, if filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: Southern District of Georgia

Case number
(if know)

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property

**12/15**

**In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2
☑ Yes. Where is the property?

1.1 428 Armstrong Way
Street address, if available, or other description

Evans GA 30809
City State ZIP Code

Columbia County
County

**What is the property?** Check all that apply
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:**
Residence, tax value

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property:*

| **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|
| $ 396,903.00 | $ 396,903.00 |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
Fee simple

☐ **Check if this is community property**

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.......................................** → $396,903.00

## Part 2: Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes